CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JAN 17 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MICROPICTURE INTERNATIONAL, INC., *Plaintiff,* v. JOSEPH A. KICKARTZ AND ROLF LINNEMANN, *Defendants.* | CIVIL ACTION NO. 3:05-CV-00034 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Joseph Kickartz's August 9, 2005 Motion to Dismiss, and Defendant Rolf Linnemann's Motion to Dismiss, which was brought initially in Virginia state court and filed in this Court by incorporation as an attachment to Linnemann's July 8, 2005 Notice of Removal.

Because the Court finds that Virginia's long arm statute does not confer personal jurisdiction over either Defendant, the Court will GRANT both motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).

## I. BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business in Troy, Virginia.[1] [Mot. Judg. ¶1]. Defendants are citizens and residents of Germany and are minority shareholders

---

[1] Although Defendants dispute the location of Plaintiff's principal place of business, arguing that it never shifted from New York to Virginia, this issue is irrelevant to the Court's analysis.

1

of Plaintiff. [Amended Not. of Rem. ¶¶2-3; Kick. Affid.¶¶1-2; Oct. 7, 2005 Linn. Affid. ¶¶1, 7].

Defendants invented a microfiche device for which they obtained a German patent in 2000. [Oct. 7, 2005 Linn. Affid. ¶3]. In May 2003, they transferred their rights to the German patent to Micropicture GmbH, a wholly owned subsidiary of Plaintiff. [Oct. 7, 2005 Linn. Affid. ¶¶3, 4; P. Memo. in Opp. at 1-2]. Plaintiff had been formed in May 2003 as part of an effort by the shareholders and lenders of Micropicture GmbH to raise capital and broaden the production and development of the microfiche device. [10/7/05 Linn. Affid. ¶2]. Key elements of the parties' relationship and respective rights concerning corporate management and governance are set forth in a "Basic Agreement Concerning an Initial Public Offering of Micropicture International, Inc., and Assignment of Shares of Micropicture GmbH to Micropicture International, Inc." ("Basic Agreement"). [Linn. Reply to Resp. (Translation of Basic Agreement)].

This matter commenced in March 2005 when Plaintiff filed a motion for judgment in the Circuit Court for Louisa County, Virginia, alleging counts of tortious interference with prospective economic relations, common law and statutory conspiracy, and defamation. In essence, Micropicture claims that Defendants have damaged its ability to attract investors and caused it economic loss by secretly meeting and conspiring with other shareholders to undermine its business and to misrepresent the goals and actions of its president and sole director, Lawrence Levine. [Mot. for Judg.].

Defendant Linnemann was served on June 8, 2005, and sought removal to this Court on July 8, 2005, before Defendant Kickartz was served in Germany on July 20, 2005. On August 8, 2005, Linnemann filed an amended notice of removal correcting various defects in the original

2

notice and attaching a Consent to Removal and Notice of Special Appearance by Defendant Kickartz. Both Defendants filed motions to dismiss urging several grounds for dismissal.

Plaintiff points to six electronic mail communications sent by Kickartz from Germany and opened by Levine in Virginia as the contacts supporting jurisdiction in this matter. [P. Memo. in Opp. 2; 6-7; Exh. A-G]. Plaintiff did not allege that Kickartz was acting on Linnemann's behalf in sending these communications until the hearing. Linnemann's only contacts with Virginia, which Plaintiff did not allege, was his December 2004 sending of an email and a letter to Levine expressing his displeasure at Levine's actions and asserting certain shareholder rights. [10/7/05 Linn. Affid. Exh. A; Hearing Exh. filed 11/7/05].

## II. DISCUSSION

When sought pursuant to a state long-arm statute, as it is here, personal jurisdiction is a two-step inquiry consisting of both statutory and constitutional components. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982). The first step requires a court to determine whether a state's long-arm statute purports to assert personal jurisdiction over a defendant. *Id.* Only if the long arm statute applies must a Court turn to the second step and assess whether the statutory assertion of personal jurisdiction comports with Due Process.

When a defendant properly challenges a court's exercise of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

a. <u>Virginia's Long Arm Statute</u>

3

Virginia's long-arm statute provides in pertinent part[2]:

> A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
> ...
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

Va. Code § 8.01-328.1 (2005).

The Virginia long-arm statute confers personal jurisdiction to the maximum extent permitted under the Due Process Clause. *Nan Ya Plastics Corp. v. DeSantis*, 377 S.E.2d 388 (Va. 1989); *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990).

To establish jurisdiction over Defendants under § 8.01-328.1(A)(4), Plaintiff must show (i) a tortious injury within Virginia caused by an act or omission outside the state and (ii) a relationship between Defendants and Virginia which exists in any one of three ways specified in (A)(4). *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir. 1985).

### b. The Long-Arm Statute Does Not Confer Personal Jurisdiction Over Defendants

Plaintiff argues that jurisdiction exists under (A)(4) because Defendants (i) purposefully transmitted communications outside Virginia that caused injury to Plaintiff in Virginia and (ii) engaged in a persistent course of conduct in Virginia by "regularly" transmitting electronic mail and written correspondence, on behalf of themselves and three other minority shareholders, to Levine in Virginia beginning in July 2004 and continuing through December 2004. [P. Memo. in Opp. 6-7]. Plaintiff does not allege that Defendants regularly do or solicit business in Virginia or

---

[2] Plaintiff abandoned any other basis for jurisdiction in its Memorandum in Opposition to Defendants' Motion to Dismiss. [P. Memo. in Opp. at 5-8].

4

derive substantial revenue from activities in Virginia, but rather rely solely on the "persistent course of conduct" prong of (A)(4).

Because the phrase "persistent course of conduct" is not self-defining, a review of cases is in order. An oft-quoted exposition of this standard is found in *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235, 1242 (E.D. Va. 1977), in which the district court held, "At a minimum, the plaintiff must prove that the defendant maintained some sort of ongoing interactions with the forum state."

Citing *Willis*, the Fourth Circuit held in *First American First v. Nat'l Assoc. of Bank Women*, 802 F.2d 1511, 1514 (4th Cir. 1986) that Defendant nonprofit trade association, which had 1,150 Virginia members, had engaged in a persistent course of conduct through its mailing of bimonthly newsletters and an annual national directory to all members, as well as its distribution of operating manuals to local groups and its state council in Virginia. By contrast, in *Booth v. Leaf*, 40 F.3d 1243 (4th Cir. 1994) (unpublished opinion), the Fourth Circuit found that the following conduct did not constitute an "ongoing interaction" with Virginia: (i) sending an allegedly defamatory letter to Virginia; (ii) visiting Virginia when subpoenaed to testify in an unrelated suit; (iii) receiving training with the U.S. Marine Corps many years before the case was filed; and (iv) driving through Virginia while traveling to other destinations. *Id.* at *2.

The district court's decision in *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483 (E.D. Va. 2003) is also instructive. There, the Court held that a North Carolina cigarette manufacturer's acceptance of plaintiff cigarette distributor's orders, and its delivery of cigarettes FOB in North Carolina with knowledge that the shipment would end in Virginia, though recurrent, did not satisfy the regular business or persistent course of conduct

prongs of (A)(4). *Id.* at 494-95. The Court emphasized that the Defendant manufacturer had no business presence in Virginia, did not advertise in Virginia, did not own real property in Virginia, had no offices or facilities in Virginia, had never set foot in Virginia, and that the cigarette shipments "were not purposefully directed contacts but were fortuitous contacts, made at [Plaintiff's] request and for [Plaintiff's] convenience." *Id.* at 494.

Although Defendants'[3] emails and Linnemann's letter and email were not made at Plaintiff's request or for Plaintiff's convenience, they are more readily characterized as fortuitous than the recurrent, ongoing contacts present in *First American*. Including Linnemann's communications, only seven emails and one letter were sent to Levine, who resides in Virginia and would be expected to open them in Virginia. Five emails were sent in July 2004 and two in December 2004, a frequency more sporadic than persistent or ongoing.[4] The Court believes the content of the emails is relevant as well. Unlike the newsletters and other mailings in *First American*, which enabled the defendant to regularly communicate with its Virginia members and therefore promote its mission and nationwide membership, Defendants merely sent their communications to Virginia as the most direct means to voice shareholder grievances, not to establish or maintain any type of ongoing Virginia presence. Defendants' emails would have been targeted for receipt in New York if Levine had not made the executive decision to move

---

[3] The Court will assume for the purposes of discussion that Kickartz was acting as Linnemann's agent—and thus attribute the emails to both Defendants—because the agency issue need not be resolved for disposition of this matter.

[4] The emails are dated July 16, 2004; July 28, 2004; July 29, 2004 at 04:15 EST; July 29, 2004 at 07:36 EST; July 29, 2004 at 08:12 EST; December 7, 2004; and December 12, 2004. [P. Memo. in Opp. Exh. A-F]; [10/7/05 Linn. Affid. Exh. A]. The letter is dated December 13, 2004. [10/7/05 Linn. Affid. Exh. B].

6

Plaintiff's place of business from New York to Virginia. In no sense did Defendants' engage in a "course of conduct" aimed at the Commonwealth.

## CONCLUSION

Plaintiff has failed to carry its burden of proving that the Virginia long-arm statute extends to Defendants' conduct, and, thus, further discussion of the grounds for Defendants' motions to dismiss is not necessary. Because this Court lacks personal jurisdiction over Defendants, their respective motions to dismiss shall be granted in an order to follow.

It is so ORDERED.

The clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

ENTERED: _____
U.S. District Judge

January 17, 2006
Date